UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

SUPPRESSED
FILED

APR 1 0 2024

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) No. | |
| | ) | |
| JAMES JOHNSON-POLK, | ) | **4:24CR162 SEP/NCC** |
| a/k/a JAMES E. JOHNSON, | ) | |
| TIFFANY N. HAUSEY, | ) | |
| STEVEN SAMPLER, | ) | |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

### COUNT I

The Grand Jury charges that:

A.      Beginning on an unknown date and continuing for a period of time, including January 2015 and continuing up to June 2021 and after, with the exact dates unknown, within the Eastern District of Missouri, and elsewhere,

**JAMES JOHNSON-POLK a/k/a JAMES E. JOHNSON, and
STEVEN SAMPLER,**

the defendants herein, did knowingly and intentionally conspire, combine, confederate and agree with each other and other persons known and unknown to this Grand Jury, to commit offenses against the United States, to wit: to distribute and possess with intent to distribute controlled substances, including but not limited to fentanyl and cocaine, both Schedule II controlled substances, and marijuana, a Schedule I controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

Quantity of Fentanyl Involved in the Conspiracy

The quantity of fentanyl involved in the conspiracy and attributable to JOHNSON-POLK and SAMPLER, resulting from their own conduct and the conduct of other conspirators, known or reasonably foreseeable to them, is 400 grams or more, making the offense punishable under Title 21, United States Code, Section 841(b)(1)(A)(vi).

B.    MANNER AND MEANS OF THE CONSPIRACY

1.    Beginning in August 2018, law enforcement, including but not limited to the United States Postal Inspection Service ("USPIS"), the Drug Enforcement Administration ("DEA") and Internal Revenue Service Criminal Investigation, have been conducting a criminal investigation into the drug trafficking and money laundering activities of JAMES JOHNSON-POLK (hereafter "JOHNSON-POLK").    The investigation eventually included co-defendants STEVEN SAMPLER ("SAMPLER") and TIFFANY N. HAUSEY ("HAUSEY").

2.    It was part of the drug trafficking conspiracy that JOHNSON-POLK would acquire controlled substances, including but not limited to fentanyl and cocaine, both Schedule II controlled substances, and marijuana, a Schedule I controlled substance, in California and mail them to STEVEN SAMPLER in the Eastern District of Missouri through the use of the United States Postal Service.

3.    It was further part of the drug trafficking conspiracy, in order to avoid detection by law enforcement, that JOHNSON-POLK would ship the controlled substances in sealed metal containers to STEVEN SAMPLER in the Eastern District of Missouri, and elsewhere, through the use of the USPS, or one or more commercial carriers, such as the United Parcel Service or Federal Express.

2

4.    It was further part of the drug trafficking conspiracy that STEVEN SAMPLER would obtain nominal addresses in the Eastern District of Missouri and forward the same to JOHNSON-POLK.  JOHNSON-POLK would then mail and ship the controlled substances to these addresses.

5.    It was further part of the drug trafficking conspiracy that STEVEN SAMPLER would have the people residing at these addresses accept, hold and deliver the controlled substances to him in various locations so that SAMPLER could avoid being caught in possession of the controlled substances.

6.    It was further part of the drug trafficking conspiracy that on or about August of 2018, JOHNSON-POLK, or someone acting on his behalf, mailed several pounds of marijuana, a Schedule I controlled substance, concealed within metal containers in Priority Mail package 9505 5152 6842 8241 3551 94, from Los Angeles, California to Saint Louis, Missouri.  The USPIS Forensic Laboratory identified eleven fingerprints belonging to Johnson-Polk located within the Priority Mail package.

7.    It was further part of the drug trafficking conspiracy that on or about June of 2021, JOHNSON-POLK shipped one kilogram of fentanyl, a Schedule II controlled substance, concealed in a metal container in a UPS package identified by tracking number 1Z 03Y 394 02 9160 9747 from Los Angeles, California to 1757 Keelen Avenue, St. Louis, Missouri 63136. Investigators had already previously identified 1757 Keelen Avenue, St. Louis, Missouri 63136 as an address that STEVEN SAMPLER used from packages that SAMPLER had previously shipped from this same address to JAMES JOHNSON-POLK.  Those packages contained large amounts of United States Currency.

3

All in violation of Title 21, United States Code, Sections 846 and 841(a).

## COUNT II

The Grand Jury further charges that:

A.       Beginning on an unknown date, and continuing for a period of time, including January 2015 and continuing up to June 2021 and after, with the exact dates unknown, in the Eastern District of Missouri, and elsewhere,

**JAMES JOHNSON-POLK a/k/a JAMES E. JOHNSON,
TIFFANY N. HAUSEY, and
STEVEN SAMPLER,**

the defendants herein, did knowingly and intentionally conspire, combine, confederate and agree with each other and other persons known and unknown to this Grand Jury, to commit offenses against the United States, to wit: to knowingly and intentionally conduct financial transactions affecting interstate or foreign commerce, which transactions involved the proceeds of a specified unlawful activity, that is, a conspiracy to distribute and possess with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a) and 846, as described in Count One.

B.    MANNER AND MEANS OF THE CONSPIRACY

1.       It was part of the money laundering conspiracy that STEVEN SAMPLER opened a small business savings and small business checking account ending in 82290 in the name of ANDAE INVESTMENT GROUP, LLC (herein "ANDAE") at a local credit union in Saint Louis Missouri.  SAMPLER organized ANDAE in the State of Missouri on or about May 30, 2013. The stated purpose for which the LLC was organized was to buy, rehab, rent and sell property.

4

SAMPLER registered ANDAE at 2920 Meramec #18631, Saint Louis, Missouri 63118.   On or about May 2017, SAMPLER converted ANDAE to the corporation ANDAE INVESTMENT GROUP, INC. SAMPLER is listed as the registered agent.   SAMPLER listed his son, Ryshad Sampler, as one of the incorporators.   Sampler listed his address as 2832 Meramec, St. Louis, MO 63118.   Ryshad Sampler's address is listed as 4611 Korte, St. Louis, MO 63118.   According to the Articles of Incorporation, ANDAE INVESTMENT GROUP, INC. was formed to buy, hold, lease and rehab property with some demolition involved.

2.      It was further part of the money laundering conspiracy that from on or about January 2015 through December 2018, STEVEN SAMPLER deposited and commingled the proceeds from a specified unlawful activity (i.e. Drug proceeds generated from activities described in Count One above) into the small business checking account ending in 2290 which SAMPLER controlled in the name of ANDAE at a local credit union in Saint Louis, Missouri, and would then wire the proceeds to accounts JOHNSON-POLK controlled at financial institutions in Los Angeles, California.   For the years January 2015 through December 2018, SAMPLER made approximately $521,966 in total deposits to his small business checking account ending in 82290 in the name of ANDAE.   Of that amount ($521,966), SAMPLER deposited $345,852 in cash and subsequently wire transferred approximately $44,220 to JOHNSON-POLK's Citibank account and approximately $176,160 to JOHNSON-POLK's EL Monte Community Credit Union account. SAMPLER and JOHNSON-POLK conducted these transactions knowing that the transactions were designed to conceal the nature, source, location, or ownership, or control of proceeds. These amounts were not reported on either SAMPLER's nor JOHNSON-POLK's U.S. Individual Tax Return for the years ending December 31, 2015, December 31, 2016, December 31, 2017,

December 31, 2018.

3.    It was further part of the money laundering conspiracy that from on or about December 2017 through May 2021, STEVEN SAMPLER opened, commingled, and deposited proceeds from a specified unlawful activity (i.e. Drug proceeds generated from activities described in Count One above) into SAMPLER's Chase Total Checking account ending in 7958.    For example, during the period December 2017 through May 2021, SAMPLER, or someone acting on his behalf or with SMAPLER's permission made ATM Cash Deposits in excess of $40,426 which were deposited at ATM locations in and around the Saint Louis Metropolitan area.    In addition, on or about March 31, 2021, SAMPLER initiated a $4,500 Zelle transfer to TIFFANY HAUSEY's (JOHNSON-POLK's girlfriend) JPMorgan Chase Bank account ending in 7500 from SAMPLER's Chase Total Checking account ending in 7958 in conjunction with a $4,000 Zelle transfer SAMPLER initiated from his ANDAE INVESTMENT GROUP account.

4.    It was further part of the money laundering conspiracy that from on or about January 2017 through March 2017, STEVEN SAMPLER or others working on SAMPLER's behalf would take proceeds from a specified unlawful activity (i.e. Drug proceeds generated from activities described in Count One above) and structure the purchase of United States Postal Money Orders in $1,000 increments from multiple United States Post Offices located in the Saint Louis Metropolitan area, knowing that the transaction was designed to conceal the nature, source, location, or ownership, or control of proceeds, then subsequently mail and/or ship those same money orders to JOHNSON-POLK through the use of the United States Postal Service or another commercial courier (i.e. United Parcel Service, Federal Express). For that same period, JOHNSON-POLK negotiated, in the Los Angeles, California area, United States Postal Money

6

Orders totaling $75,000 and TIFFANY HAUSEY negotiated United States Postal Money Orders totaling $5,200.00,

5. It was further part of the money laundering conspiracy, that that STEVEN SAMPLER or others working on SAMPLER's behalf would take proceeds from a specified unlawful activity (i.e. Drug proceeds generated from activities described in Count One above), conceal the drug proceeds inside a sealed metal container and subsequently mail and or ship the drug proceeds to JOHNSON-POLK in Los Angeles, California, knowing that the transaction was designed to conceal the nature, source, location, or ownership, or control of the drug proceeds.

6. It was further part of the money laundering conspiracy that on or about March 2020, JOHNSON-POLK added TIFFANY HAUSEY to his member account ending in 0185 at El Monte Credit Union.

7. It was further part of the money laundering conspiracy that on or about July 2020, TIFFANY HAUSEY fraudulently applied for and received an Economic Disaster Loan from the Small Business Administration in the amount of $137,400 that was ultimately deposited to TIFFANY HAUSEY's JPMorgan Chase Bank account ending 7500.

8. It was further part of the money laundering conspiracy that on or about September 8, 2020, TIFFANY HAUSEY, or someone acting on her behalf or with her permission, structured the deposit of $15,920 in currency into TIFFANY HAUSEY's JPMorgan Chase Bank account ending 7500 at the Chase Bank located at #1 Brentwood Promenade Court, Saint Louis, Missouri.

9. It was further part of the money laundering conspiracy that on or about September 15, 2020, TIFFANY HAUSEY, or someone acting on her behalf or with her permission completed a transfer of $122,000 from TIFFANY HAUSEY's JPMorgan Chase Bank account ending 7500

to TIFFANY HAUSEY's JPMorgan Chase Bank account ending 8627.

10.     It was further part of the money laundering conspiracy that on or about October 13, 2020, TIFFANY HAUSEY purchased a JPMorgan Chase Cashier's Check 1161148206 in the amount of $14,077.81 payable to JOHNSON_POLK from the balance in TIFFANY HAUSEY's JPMorgan Chase Bank account ending 8627.   JPMorgan Chase Cashier's Check 1161148206 was subsequently deposited into JOHNSON-POLK's and TIFFANY HAUSEY's member account ending in 0185 at El Monte Credit Union.

11.     It was further part of the money laundering conspiracy that on or about November 25, 2020, TIFFANY HAUSEY purchased JPMorgan Chase Cashier's Check 9601204871 in the amount of $14,177.81 payable to JOHNSON-POLK from the balance in TIFFANY HAUSEY's JPMorgan Chase Bank account ending 8627.   JPMorgan Chase Cashier's Check 9601204871 was subsequently deposited into JOHNSON-POLK's and TIFFANY HAUSEY's member account ending in 0185 at El Monte Credit Union

12.     It was further part of the money laundering conspiracy that on or about January 12, 2021, TIFFANY HAUSEY purchased JPMorgan Chase Cashier's Check 1161149165 in the amount of $14,177.81 payable to JOHNSON-POLK from the balance in TIFFANY HAUSEY's JPMorgan Chase Bank accounts ending in 7500 and 8627.   JPMorgan Chase Cashier's Check 1161149165 was subsequently deposited into JOHNSON-POLK's and TIFFANY HAUSEY's member account ending in 0185 at El Monte Credit Union.

13.     It was further part of the money laundering conspiracy that from on or about December 2020 through February 2021, TIFFANY HAUSEY drafted $33,755.00 in check payments from her JPMorgan Chase Bank accounts ending in 8627, including check #1656 dated

8

December 7, 2020, payable to Mercedes-Benz of Long Beach in the amount of $5,880.00 for a lease down payment on a vehicle; and check #1657 dated February 13, 2021, payable to Penske Buick GMC in the amount of $25,000.00 for the down payment on a vehicle to be used by JOHNSON-POLK.

14.    It was further part of the money laundering conspiracy that on or about September 2021, TIFFANY HAUSEY structured a cash deposit totaling $11,950 into her JPMorgan Chase Bank accounts ending in 7500.

All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1956(h).

### FORFEITURE ALLEGATION

The Grand Jury further finds by probable cause that:

1.    Pursuant to Title 21, United States Code, Sections 853, upon conviction of an offense in violation of Title 21, United States Code, Sections 841 and 846 as set forth in Count I, the defendants shall forfeit to the United States of America any property constituting or derived from any proceeds obtained, directly or indirectly, as a result of the offense; and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense.

2.    Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds obtained directly or indirectly as a result of such violation.

3.    Pursuant to Title 18, United States Code, Sections 982(a), upon conviction of an offense in violation of Title 18, United States Code, Section 1956, as set forth in Count II, the defendants shall forfeit to the United States of America any property, real or personal, involved in

9

such offense, or any property traceable to such property.

4.     Subject to forfeiture is a sum of money equal to the total value of any property, real or personal, constituting or derived from any proceeds obtained directly or indirectly as a result of such violation.

5.     Specific property subject to forfeiture includes, but is not limited to, the following:

a.     Real Property located at 10526 Pico Vista Road, Downey, CA 90241, together with all appurtenances, improvements and attachments thereon, which is more particularly described as Lot 42 of Tract No 14546, in the City of Downey, County of Los Angeles, State of California, as per Map recorded in Book 562, Page 12 of Maps, in the Office of the County Recorder of said County;

b.     Approximately $11,000.00 U.S. Currency;

c.     $48,253.32 in funds from JP Morgan Chase Bank acct.#...6548;

d.     $19,151.32 in funds from JP Morgan Chase Bank acct.#...7500;

e.      $51,166.44 in funds from JP Morgan Chase Bank acct.#...8627;

6.     If any of the property described above, resulting from any act or omission of the defendant(s):

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty,

10

the United States of America will be entitled to the forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

A TRUE BILL.

_____
FOREPERSON

SAYLER A. FLEMING
United States Attorney

_____
GEOFFREY S. OGDEN, #66930MO
Assistant United States Attorney

11